CARLTON FOSS FREESE *vs.* APOLINARY PAVLOSKI *et als.*

DECEMBER 4, 1916.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Contracts.   Commissions.   Fraud.*

It appeared that a newspaper was accustomed to allow advertising agents a discount on its established rates, for advertisements, but would not allow such discount to an employee of another newspaper, and plaintiff, employed by another newspaper, entered into a contract with defendants to procure certain advertising for them under the special open space rates of the newspaper.   Plaintiff testified that defendants, as local dealers, could not have obtained these rates, but that he personally could have placed the contract, but had it placed through an advertising agency in order to get part of the commission.

*Held,* that even if in the making of the contract with the newspaper there were such misrepresentation (of which there was no evidence), by the agency, as to entitle the newspaper to maintain an action of deceit against the agency, this would not affect the liability of defendants on their con-. tract with plaintiff as there was no suggestion that it was within the contemplation of either party to carry it out by fraudulent means.

ASSUMPSIT.   Heard on motion for a reargument and denied.

BAKER, J.   The defendants have moved for a reargument on the ground that the court misconceived the evidence, apparently because in the opinion certain portions of the testimony were not discussed in considering the claim of fraudulent conduct.   As we did not before discuss with particularity the ground on which he now urges the claim of fraud, we will now consider it.

The testimony shows that one of the defendants sent for the plaintiff in order to make a contract for this advertising; that after a talk and discussion, as to terms and different rates which might be obtained in the newspapers, the plaintiff submitted a proposition, which was later accepted by the defendants.   As already stated this agreement was that the defendants were to use ten thousand lines of advertising space in one year in the Journal and Bulletin and the plaintiff

was to procure this advertising under the special open space rates as they appeared upon the rate card of these papers. This in form was a perfectly legal contract by which the plaintiff bound himself to the defendants to secure certain work done for them by other persons for a stated price. *He* assumed whatever risk there might be in obtaining the work done at the price named. The claim of fraud is based chiefly on these facts, namely, that on the rate card the words "open space rates" is preceded by the word "foreign" and followed by the words "For general advertisers, not applicable to local advertising," and the statement by the plaintiff in cross-examination that the defendants themselves as local dealers could not have placed this advertising at open space rates, although the car manufacturers could have done so. The plaintiff, however, also says that he personally could have placed the contract with the Journal Company at open space rates, but had it placed through the Boston agency in order to get part of the commission. The contract of the Boston advertising agency with the Journal Company as to the Kissel-Kar advertisements is not in evidence, and we are not informed as to its express terms. There is no evidence of any misrepresentation or concealment of material facts in its making. The Boston agency was acquainted with the rates of advertising of the Journal Company. It is possible to *conjecture*, if not to *conclude*, that, notwithstanding some of the provisions of the rate card, all contracts made by it with advertising agencies calling for the use of a definite amount of space in one year are under the stated special open space rates. The control of advertising business by agencies, which apparently leads to the allowance to them of discounts or commissions on business brought by them, although discounts and commissions are not mentioned in the statement of advertising rates on the card, may also be an inducement to extend to such agencies some consideration in the matter of the rates themselves. But we do not regard this as important whatever the fact may be. For even if in the making of the contract with the Journal

Company there were such misrepresentation or concealment of material facts by the Boston agency as to entitle the Journal Company to maintain an action of deceit against the agency, this fact would not affect the liability of the defendants on their contract with the plaintiff, as there is in the record no suggestion that it was within the contemplation of either party thereto to carry it out by fraudulent means. We find therefore nothing in any of the transactions described which can justify the defendants in refusing to pay the balance due for the advertising.

As indicated in the opinion already delivered, we think the cases cited by the defendants as to the nonenforcibility of contracts fraudulent as to third persons are not in point. In them attempts were made to enforce contracts to pay money in consideration that one refrained to bid at an auction, or that a stockholder voted a certain way at the meeting of the stockholders of a corporation, or to recover commissions for acting as agent for both parties to a contract for the purchase and sale of property, without disclosing to them the fact that he was so acting. These and similar contracts are in some instances held void as against public policy or as operating as a fraud upon some one to whom under existing conditions of association a duty is owing. Such cases are clearly distinguishable from the case at bar and it cannot rightfully be claimed that the contract now sued on contemplated the perpetration of a fraud upon the Providence Journal Company.

The motion for a reargument is denied.

*Thomas A. Jenckes, Jr.,* for plaintiff.

*William J. Brown,* for defendant.